**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**
**PHILADELPHIA DIVISION**

| | | |
|---|---|---|
| **SCOTT H. KORN,** | : | |
| **AND ARLENE A. KORN,** | : | |
| | : | |
| **Plaintiffs,** | : | **Case No. 2:19-cv-00226** |
| **v.** | : | |
| | : | **Judge Cynthia M. Rufe** |
| **CALIBER HOME LOANS, INC.** | : | |
| | : | |
| **Defendant.** | : | |

<u>**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**</u>

**I.    Background**

Plaintiffs have filed this lawsuit against Caliber. Caliber is the loan servicer for the LSF9 Master Participation Trust ("LSF9"). Complaint[1], ¶ 14. On September 27, 2018, LSF9 filed an amended foreclosure complaint against Plaintiffs in Montgomery County, Pennsylvania. *See* LSF9 Motion to Intervene, Ex. 2. That claim is pending because, on December 11, 2018, the state court denied Plaintiffs' preliminary objections to LSF9's foreclosure complaint. *Id.,* Ex. 3.

On January 8, 2019, two days before Plaintiffs filed this complaint against Caliber, Plaintiffs filed counterclaims against LSF9 in the state court foreclosure case. *Id.*, Ex. 4. On February 5, 2019, LSF9 filed a Motion to Intervene in this case. The Motion to Intervene is not opposed, and remains pending.[2] Because Plaintiffs' claims asserted in this case are essentially identical to Plaintiffs' claims in the foreclosure litigation, on March 14, 2019, the parties filed a Joint Motion to Stay the foreclosure litigation pending resolution of this case.

---

[1] Dkt. 1-1
[2] Because of the requirements of Fed. R. Civ. P. 24, LSF9 filed a proposed answer as part of its Motion to Intervene. However, because the arguments herein equally support dismissal of the claims against LSF9, if permitted to intervene, LSF9 will file a Motion for Judgment on the Pleadings that incorporates the arguments herein.

Caliber now files this Motion to Dismiss Plaintiff's complaint against Caliber under Fed. R. Civ. P. 12(b)(6). As described in detail herein, all five of Plaintiffs' claims against Caliber fail to state a claim upon which relief can be granted, and thus must be dismissed.

## II.   Argument

### A. Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint, not the merits. *Jankowski v. Lellock*, 649 F. App'x 184, 186 (3d Cir. 2016). The court accepts all well-pleaded factual allegations of the complaint as true and draws all reasonable inferences from those allegations in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice[,]" nor are legal conclusions assumed true. *Id.* Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (*quoting Twombly*, 550 U.S. at 570). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully," but it is not a "probability requirement[.]" *Id.* (*quoting Twombly*, 550 U.S. at 556). A claim crosses from conceivable to plausible when it contains factual allegations that, if proved, "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The Third Circuit has elucidated a three-part inquiry in reviewing a motion to dismiss under Rule 12(b)(6). The three steps are: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

**B. Plaintiffs' Claim for Breach of Contract (Count I) Fails to State a Claim**

Plaintiffs have failed to plead factual allegations sufficient to support the elements of a breach of contract claim. The elements of a breach of contract claim in Pennsylvania are "(1) the existence of a contract […] (2) a breach of a duty imposed by the contract, and (3) resultant damages." *Pennsy Supply Inc. v. American Ash Recycling Corp. of Pennsylvania*, 895 A.2d 595, 600, 2006 PA Super 54 (Pa. Super. Ct. 2006) (internal citation omitted). Courts have also noted that a party alleging a breach of contract must plead the "essential terms" of that contract. *Kaymark v. Bank of Am.*, 783 F.3d 168, 182 (3d Cir. 2015). This Court has suggested that a party must, at least "inferentially," allege his own performance. *Aamco Automatic Transmissions, Inc. v. Tayloe*, 368 F.Supp. 1283, 1287 (E.D. Pa. 1973) (the claim survived dismissal because it alleged a contract, a breach, "and, inferentially, performance of his contractual duties…" ).

Furthermore, a party seeking damages under a breach of contract theory must show that it performed under the contract, as contract damages exist to "place the non-breaching party 'as nearly as possible in the same position [it] would have occupied had there been no breach.'" *Helpin v. Trustees of Univ. of Penn.*, 608 Pa. 45, 50, 10 A.3d 267 (Pa. 2010) (internal citation omitted). In addition, a "material breach by one party to a contract entitles the non-breaching party to suspend performance. […] If a breach constitutes a material failure of performance, then the non-breaching party is discharged from all liability under the contract." *Falls v. State Farm Ins. Mut. Auto Ins. Co.*, 774 F.Supp.2d 705, 711 (M.D. Pa. 2011) (quoting *Widmer Eng'g, Inc. v. Dufalia*, 837 A.2d 459, 467 (Pa. Super. Ct. 2003)).

Count I of the Complaint, for an alleged breach of contract, is legally insufficient because Plaintiffs have not alleged their own compliance with the contract and, as a result, Plaintiffs have neither suffered compensable damages nor demonstrated that they are a non-breaching party. In

addition, Plaintiffs' breach of contract claim, to the extent it relies on Plaintiffs' allegations concerning the monthly payments Caliber sought from Plaintiffs, fails as a matter of law because Plaintiffs' allegations are contradicted by materials Plaintiffs have submitted to the Court.

Plaintiffs cannot recover any damages because they have not alleged, and have not suffered, any damages from the purported breach of contract. *See generally* Complaint. The contract at issue is a settlement agreement which Plaintiffs allege they entered into on November 17, 2010 with Caliber's predecessor in interest (the "Confidential Settlement Agreement"). Complaint, ¶ 8. Plaintiffs are a non-performing party, not a non-breaching party, as Plaintiffs' account reflects that they have not made a single payment since the prior settlement agreement in 2010, and Plaintiffs make no allegation of performance. *See generally* Complaint. By Plaintiffs' own allegations, Plaintiffs had a duty to perform under the contract, namely a duty to make monthly principal and interest payments of $14,826.90. Complaint, ¶ 10. Plaintiffs do not allege that they ever made, or attempted to make, such a monthly payment. *See generally Id.* Because, per Plaintiffs' own allegations, this is Plaintiffs' only obligation under the Confidential Settlement Agreement, Plaintiffs' failure to perform this obligation is a material breach. *Id.*, ¶ 10; *Falls v. State Farm Ins. Mut. Auto Ins. Co.*, 774 F.Supp.2d 705, 711 (M.D. Pa. 2011) (detailing the factors considered in determining materiality, beginning with "the extent to which the injured party will be deprived of the benefit which he reasonably expected…") (internal citation omitted). The benefit to Caliber, and its predecessors, in entering into the Confidential Settlement Agreement was securing Plaintiffs' reiterated obligation to make monthly payments. Having failed to do so, Plaintiffs materially breached the Confidential Settlement Agreement, and cannot recover damages for a purported breach by Caliber.

Rather than allege their own performance, Plaintiffs claim that they have no duty to comply with the Confidential Settlement Agreement because Caliber, or its predecessors in interest, materially breached it. Complaint, ¶ 31. But even if Plaintiffs can so demonstrate, which Caliber denies, Plaintiffs have already taken the self-help remedy of choosing not to perform, and thus have suffered no damages. As a result, Plaintiffs have not, and cannot, assert any factual allegations that they have suffered damages and only make mere conclusory allegation of damages in the Complaint. Complaint, ¶ 32. The Court need not accept conclusory allegations as true and such allegations, without more, must fail as a matter of law.

Awarding monetary damages would have the effect of giving Plaintiffs a windfall recovery that would go far beyond placing them in the position Plaintiffs would have been in but for the alleged breach of contract by Caliber. Plaintiffs lack damages. Plaintiffs' breach of contract claim must fail as a matter of law.

Plaintiffs' breach of contract claim also fails as a matter of law because it is belied by Plaintiffs' own exhibits. *See Mickel Drilling Partners ex rel. Mickel v. Cabot Oil & Gas Corp.*, No. 3:cv-11-0061, 2012 WL 4953081, at *8 (M.D. Pa. Oct. 16, 2012) ("a plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment.") (internal quotation omitted). Plaintiffs allege that Caliber violated the Confidential Settlement Agreement by charging an interest rate above 4% and by charging monthly payments up to $28,364.02, more than the purportedly agreed monthly payment of $14,826.90. Complaint, ¶¶ 11, 17. But this is contradicted by Plaintiffs' own exhibits, including a November 2016 billing statement which shows 4% interest and a principal payment of $3,814.10 and an interest payment of $11,012.80, for a total monthly principal and interest payment of

$14,826.90. *See* Complaint, Exhibit A, pg. 5. Payments increased beyond that amount because of

escrow, and late fees and charges associated with Plaintiffs' long-standing non-payment. *Id.*

Plaintiffs' breach of contract claim might be a defense to the pending foreclosure action

against Plaintiffs in state court but it is not an independent cause of action. In any event, even if

Plaintiffs were right as to Caliber's purported breach (and they are not), they will have every

opportunity to raise their argument as part of the foreclosure case. Permitting this affirmative

defense (flawed as it is) to stand as an affirmative claim for relief serves no purpose, particularly

when Plaintiffs have failed to sufficiently allege the elements of a breach of contract action.

Plaintiffs' breach of contract claim fails as a matter of law and should be dismissed.

### C. Plaintiffs' Fraudulent Misrepresentation Claim (Count II) and Negligent Misrepresentation Claim (Count III) Fail as a Matter of Law as No Misrepresentation Has Been Alleged and the Conduct at Issue is Inadmissible Settlement Communications

Under  Fed. R. Civ. P. 9(b), "[i]n alleging fraud or mistake, a party must state with

particularity the circumstances constituting fraud or mistake." Plaintiffs' claims of fraudulent and

negligent misrepresentation fail under this standard, and should be dismissed.

The elements of a fraudulent misrepresentation under Pennsylvania law are a

representation, material to the transaction, made falsely, with knowledge or recklessness as to its

falsity, intended to induce reliance, justifiably inducing reliance, with a resulting injury

proximately caused by the reliance. *David Pflumm Paving & Ecavating Inc. v. Foundation*

*Services Co.*, 816 A.2d 1164, 1171, 2003 PA Super 41 (Pa. Super. Ct.  2003). In addition, under

Fed. R. Civ. P. 9(b) a fraud claim must provide the "who, what, when, where and how…"

regarding the alleged fraud. *McCracken v. Daimler Chrysler Motors Co., LLC*, No. 07-2202,

2008 WL 920344, at *6 (E.D. Pa. Apr. 3, 2008) (internal citation omitted). A plaintiff can do so

by pleading the "date, place or time" of the fraud, but "must, at minimum, set forth the exact

statement or actions that allegedly constitute the fraudulent misrepresentations." *Id.* (internal citation omitted). To be actionable, the statement must be "a representation of a past or present material fact." *Id.* (internal quotation omitted). In other words, it cannot be merely a future promise to do something. This Court has dismissed claims for fraudulent misrepresentation which fail to "give details as to what the exact statement was, when it was made, to whom it was made, or the context in which the statement was made." *Bionix Development Corp. v. Sklar Corp.*, No. 07-cv-4465, 2009 WL 3353154, at *3 (E.D. Pa. Oct. 14, 2009).

Like the fraudulent misrepresentation claim, Plaintiffs' negligent misrepresentation claim also fails because it too is reliant on the same purported but unspecified statement(s) by Caliber. Negligent misrepresentation requires: a misrepresentation of a material fact, where the speaker ought to have known the statement's falsity, intended to induce reliance, and a resulting injury based on justifiable reliance. *Bilt-Rite Contractors, Inc. v. The Architectural Studio,* 866 A.2d 270, 277, 581 Pa. 454 (Pa. 2005) (internal citation omitted). This Court has noted an ongoing disagreement within the Third Circuit, and even between decisions of this Court, as to whether the Rule 9(b) standard applies to negligent misrepresentation. *See McLaughlin v. Bayer Corp.*, 172 F.Supp.3d 804, 829 (E.D. Pa. 2016) (citing prior cases from this Court reaching contrary results). Other cases, though not formally applying Rule 9(b), have "held that a plaintiff must nonetheless plead negligent misrepresentation with a degree of specificity." *Id.* (quoting *Scott v. Bimbo Bakeries, USA, Inc.*, Civ. A. No. 10-3154, 2012 WL 645905, at *5 (E.D. Pa. Feb. 29, 2012)) (abrogated on other grounds). Even when this Court has applied the Rule 12(b)(6) standard to negligent misrepresentation claims, the Court has found allegations sufficient when "the Complaint alleges the substance of the alleged misrepresentations…" and an allegation as to where those statements appeared. *Id.* at 830 (in that case, the defendant's website and brochures).

Plaintiffs' allegations of fraud and negligent misrepresentation, which underlie Counts II and III of Plaintiffs' Complaint, plainly fail to meet the Rule 9(b) standard that applies to Plaintiffs' fraudulent misrepresentation claim and any of the various standards which this Court has applied to negligent misrepresentation claims. Plaintiffs fail to allege any specific statement made by anyone on behalf of Caliber concerning the appraisal of Plaintiffs' property. *See e.g.* Complaint, ¶¶ 34-37 (alleging generally that Caliber "hid" the lower appraisal value and purportedly "represented" inaccuracies regarding the higher appraisal value). As a result, Counts II and III of the Complaint fail as a matter of law. There are three points at which a statement could have been made. But no statements that can support a claim have been alleged. First, Plaintiffs claim that the parties "agreed that Caliber/LSF9 would obtain an independent appraiser to value the Property. " *See e.g.* Complaint, ¶ 34. However, this cannot be the basis for a claim of fraudulent or negligent misrepresentation because Plaintiffs neither set forth the exact statement at issue nor when or by whom any such statement was made. Plaintiffs fail to even allege the substance of the alleged misrepresentation. Likewise, because any such statement would not have been of an existing fact, but the promise of future action, no cause of action can exist.

Second, Plaintiffs claim Caliber "instructed Mr. Maddrey [the appraiser] to re-appraise the Property at a higher value and threatened Mr. Maddrey that he would not receive any more appraisal work if he refused." Complaint, ¶ 22. Any such statement cannot be the basis for a misrepresentation claim because, once again, no statement is alleged, and there is no allegation as to who made a statement or when a statement was made. Even if such a statement were made, which Caliber denies, it would have been a promise of future action, and thus insufficient.

Third, Plaintiffs claim that Caliber did not disclose its "improper influence on the appraiser," hid the lower appraisal value from Plaintiffs, and "grossly overinflated the appraisal

in its negotiations with the Korns and their counsel." Complaint, ¶ 24. But, once again, there is no allegation as to exactly what statement was allegedly made, or perhaps more accurately, not made, nor any allegations as to who made the statement or when the statement was made. *See generally* Complaint. By failing at each point in the allegations to state a misrepresentation, Plaintiffs have failed to sufficiently plead either a fraudulent or negligent misrepresentation.

However, even if Plaintiffs were to allege an "exact statement" by Caliber that purportedly supported their fraudulent or negligent misrepresentation claims, such claims would still fail. By Plaintiffs' own allegations, all communications concerning the 2017 appraisal occurred in the context of settlement negotiations between Plaintiffs and Caliber. Plaintiffs allege that Caliber agreed to retain an independent appraiser to perform an appraisal and that "[a]ll parties understood that said value would be used as the starting point for *further* settlement discussions." Complaint, ¶ 34 (emphasis added). Thus, it is clear from Plaintiffs' allegations that settlement negotiations between Plaintiffs and Caliber had begun before any discussion of an appraisal, and thus that all communications between Plaintiffs and Caliber concerning the appraisal were part of ongoing settlement negotiations. *See also* Complaint, ¶¶ 18-19 (describing that settlement negotiations had occurred before any communications concerning the appraisal). The Federal Rules of Evidence prohibit the introduction into evidence of "conduct or a statement made during compromise negotiations about the claim." Fed. R. Evid. 408(a).

Plaintiffs must ultimately plead and prove a statement made by, or on behalf of, Caliber, which will require an admissible statement. However, based on Plaintiffs' pleading, any such statement would be inadmissible. Plaintiffs' fraudulent and negligent misrepresentation claims and should be dismissed. For these reasons, and those explained in § II(D), *infra*, Plaintiffs' claims for fraudulent and negligent misrepresentation fail as a matter of law.

**D. Plaintiffs' Fraudulent Misrepresentation and Negligent Misrepresentation Claims (Counts II and III) Fail as a Matter of Law as Plaintiff Cannot Allege any Duty of Disclosure on the Part of Defendant or Justifiable Reliance**

Counts II and III of Plaintiffs' Complaint fail because Plaintiffs have not alleged any non-contractual duty for Caliber to disclose a purported lower appraisal value. Recovery in tort for misrepresentation requires a duty imposed by law because "tort law (unlike contract law) is not generally intended to compensate parties for losses suffered as a result of a breach of duties that are assumed only by agreement…" *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 581 Pa. 454, 459, 866 A.2d 270 (Pa. 2005). Generally, there is no duty to disclose and "[m]ere silence in the absence of a duty to speak, however, cannot suffice to prove fraudulent concealment." *Sevin v. Kelshaw*, 417 Pa.Super. 1, 611 A.2d 1232 (Pa. Super. Ct. 1992).

Plaintiffs have not pointed to, and cannot point to, any legal duty for Caliber to perform an independent appraisal or to inform Plaintiffs of every appraisal. Plaintiffs allege that Caliber "influenced the real estate appraiser, who was supposed to perform an 'independent' appraisal…" to increase the amount of the appraisal. Complaint, ¶ 35. But such a claim is premised upon the parties' alleged agreement that Caliber would retain an independent appraiser to conduct an appraisal. *Id.*, ¶ 34. Any such claim would be the result of a duty assumed by agreement, and any claim brought based on that agreement would sound in contract, not in tort, and would need to sufficiently allege the breach of contract elements. *See e.g. Vives v. Rodriguez*, 849 F.Supp.2d 507, 516 (E.D. Pa. 2012) (as per Third Circuit authority and Pennsylvania authority, gist of the action doctrine "operates to preclude a plaintiff from re-casting ordinary breach of contract claims into tort claims.") (internal quotation omitted). The touchstone consideration is whether the duty allegedly breached was assumed by agreement, when the claim must be brought as a breach of contract, or whether the duty would exist

10

independent of any agreement, when it may be brought as a tort. Plaintiffs' attempt to repackage a claim based on a duty allegedly assumed by agreement into a tort claim fails as a matter of law.

In addition, under Pennsylvania law, both fraudulent misrepresentation and negligent misrepresentation require justifiable reliance upon the statement(s) at issue and damages stemming from the justifiable reliance. *See David Pflumm Paving & Excavating, Inc. v. Foundation Services Co.*, 816 A.2d 1164, 1171, 2003 PA Super 41 (Pa. Super. Ct. 2003); *Bilt-Rite Contractors, Inc. v. The Architectural Studio,* 581 Pa. 454, 866 A.2d 270, 277 (Pa. 2005) (internal citation omitted). There is no such justifiable reliance and no such damages here.

Plaintiffs only allege generally that they have justifiably relied on the purported misrepresentations and have suffered resulting damages. *See e.g.* Complaint, ¶¶ 39-42. However, given that Plaintiffs have from the outset challenged the accuracy and independence of Caliber's appraisal and given that the alleged misrepresentation(s) were made after a foreclosure action had already been filed against Plaintiffs, these allegations are both entirely unsupported and unsupportable. Rather, Plaintiffs' Complaint repeatedly and conclusively demonstrates that they have never relied upon and have consistently disputed Plaintiff's appraisals. *Compare* Complaint, ¶ 24 (alleging that "Caliber/LSF9 grossly overinflated the appraisal in its negotiations…" with Plaintiffs, but not alleging that Plaintiffs ever relied on that appraisal); Foreclosure Case, Motion to Stay, attached hereto as Exhibit 1 (showing that foreclosure case is ongoing, and thus that disputed appraisal value was never accepted as part of a settlement).

Furthermore, any damages Plaintiffs could have suffered would require Plaintiffs to have justifiably relied on Caliber's appraisal, which would require that the appraisal was actually inaccurate. Plaintiffs cannot so demonstrate because the Pennsylvania Supreme Court has found that "…we hesitate to find reliance justified where the party claiming reliance had an adequate

opportunity to verify the allegedly fraudulent statements." *Porreco v. Porreco*, 571 Pa. 61, 71, 811 A.2d 566 (Pa. 2002) (finding reliance on allegedly inaccurate valuation of a ring plaintiff possessed was not reasonable). The same is true here. Plaintiffs lived in the house at the time of the appraisal, and still live in the house, and could have secured their own appraisal.

**E. Plaintiffs' Claim for Civil Conspiracy (Count IV) Must Fail as a Matter of Law**

Count IV of Plaintiffs' Complaint, for a civil conspiracy, also fails as a matter of law for two reasons. First, a civil conspiracy claim under Pennsylvania law requires an underlying intentional tort. Therefore, if Plaintiffs' fraudulent misrepresentation claim fails, Plaintiffs' civil conspiracy claim must fail as a matter of law. Second, an entity cannot conspire with itself, nor can agents of one entity conspire with each other, and, by Plaintiffs' own allegations, LSF9 and Caliber are so closely related that they could not have conspired with one another.

The elements of civil conspiracy in Pennsylvania are "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or with an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual damages." *Goldstein v. Phillip Morris, Inc.*, 854 A.2d 585, 590, 2004 PA Super. 260 (Pa. Super. Ct. 2004). Such a claim requires an underlying "intentional or criminal act" and not just an underlying negligence or strict liability claim. *Id.* As a result, when a fraud claim is dismissed, a civil conspiracy claim based on that fraud claim must be dismissed. *Id.* at 590-91.

Though Plaintiffs raise numerous claims, only Plaintiffs' fraudulent misrepresentation claim is an intentional tort which can underlie a civil conspiracy claim. Because that claim fails as a matter of law, as described above, Plaintiffs' civil conspiracy claim must fail as well.

The first element of civil conspiracy is a combination of two or more persons. Pennsylvania courts are clear that "[a] single entity cannot conspire with itself and, similarly,

agents of a single entity cannot conspire among themselves." *Grose v. Procter & Gamble Paper Products*, 866 A.2d 437, 441 (Pa. Super. Ct. 2005) (internal quotation omitted). Plaintiffs allege, correctly, that Caliber claims to be the servicer for LSF9. Complaint, ¶ 14. Plaintiffs also allege that LSF9 "owns Caliber, and Caliber operates as LSF9's representative." *Id.* While Plaintiffs' allegations of ownership are not entirely accurate, the overall thrust of Plaintiffs' allegations is correct, Caliber is the servicing agent for, and works on behalf of, LSF9. They are, for all intents and purposes, advancing the interests of the same entity and therefore cannot conspire with one another. Plaintiffs' claims that LSF9 and Caliber engaged in a civil conspiracy with one another must fail as a matter of law based on Plaintiffs' own allegations.

### F. Plaintiffs' Claim FCEUA Claim (Count V) Should Be Dismissed

Count V of Plaintiffs' Complaint, an alleged violation of the Fair Credit Extension Uniformity Act, 73 P.S. § 2270.1, *et seq.* ("FCEUA") fails because Plaintiffs fails to plead the essential facts that would support such a claim under FCEUA. Generally, the FCEUA "establishes what shall be considered unfair methods of competition and unfair or deceptive acts or practices with regard to collection of debts." 73 P.S. § 2270.1. The FCEUA generally restricts the actions of both creditors and debt collectors in collecting debts. A creditor is the person or entity "…to whom a debt is owed or alleged to be owed." 73 P.S. § 2270.3. A debt collector is "not a creditor […] acting on behalf of a creditor […] in collecting a debt." 73 P.S. § 2270.3. Courts have noted that this is narrower than the definition of a debt collector under the FDCPA and that not all debt collectors under the FDCPA will be debt collectors under the FCEUA. *See Bret Binder v. Weststar Mortgage, Inc.*, No. 14-7073, 2016 WL 3762710, at *26 (E.D. Pa. Jul. 13, 2016). As to debt collectors, the FCEUA incorporates the restrictions of the FDCPA. 73 P.S. § 2270.4(a). As to creditors, the FCEUA specifies particular prohibited actions, many drawn

from the FDCPA's restrictions on debt collectors. *See generally* 73 P.S. § 2270.4(b).

Importantly, because "the FCEUA does not provide individuals with the right to institute private

causes of action for violations, individual plaintiffs must use 73 P.S. § 201-9.2, the remedial

provisions of the UTPCL, [the Unfair Trade Practices and Consumer Protection Law] to obtain

relief." *See Benner v. Bank of America, N.A.*, 917 F.Supp.2d 338, 359 (E.D. Pa. 2013).

      As this court has noted, "Section 2270.4 of the FCEUA establishes rules for creditors,

setting forth what constitutes unfair or deceptive acts or practices." *Hall v. Equifax Information*

*Services, LLC*, 204 F.Supp.3d 807, 810 (E.D. Pa. 2016) (internal citation omitted). Tellingly,

Plaintiffs fail to allege any specific act or statement by Caliber which purportedly violates the

FCEUA. *See Complaint*, ¶¶ 59-66. Instead, Plaintiffs parrot the language of the statute. *Compare*

Complaint, ¶¶ 62-65 and 73 P.S. § 2270.4(b)(4)-(6). This is the threadbare recital of elements

which fails to state a claim. *See e.g. Iqbal*, 556 U.S. at 678 (2009). To the extent Plaintiffs seek

to rely on Caliber's statements or acts that allegedly violate the Confidential Settlement

Agreement, those statements or acts fail to state a claim as outlined in § II(B), *supra*. In short,

Plaintiffs' allegations concerning the interest rate and monthly payment charged are contradicted

by Plaintiffs' exhibits. Finally, Plaintiffs assert, as a legal conclusion, that Plaintiffs are entitled

to damages under the FCEUA. *Id.*, ¶ 66. However, Plaintiffs do not support that allegation with

any factual allegations, and the Court need not accept that conclusory allegation as true.

      The FCEUA provides that "[i]f a debt collector or creditor engages in an unfair or

deceptive debt collection act or practice under this act, it shall constitute a violation of the

[UTPCPL]." 73 P.S. § 2270.5. In interpreting this language, Pennsylvania courts have held that

this "evinces a clear intent by our Legislature that FCEUA claims be treated in the same manner

as other private action claims under the UTCPL […] FCEUA claims therefore must plead that a

plaintiff suffered an ascertainable loss *as a result of* a defendant's prohibited action." *Kaymark v. Bank of America, N.A.*, 783 F.3d 168, 182 (3d Cir. 2015) (quoting *Kern v. Lehigh Valley Hosp., Inc.*, 108 A.3d 1281, 1290, 2015 PA Super 19 (Pa. Super. Ct. 2015)). This requires justifiable reliance. *Kern*, 108 A.3d at 1290. Plaintiffs allege no ascertainable loss nor any justifiable reliance. *See* Complaint, ¶¶ 62-66 (alleging only that Plaintiffs are entitled "to recover punitive and treble damages" under the FCEUA without specifying the damages purportedly suffered or causation of those damages). Once again, Plaintiffs have not plead, and cannot show, any damages because Plaintiffs have not made payments in years. This is fatal to Plaintiffs' claim. *See Kaymark*, 783 F.3d at 183 (affirming dismissal of claim under FCEUA, and claim for breach of contract, based on damages for disputed fees and expenses which Plaintiff never paid).

The statute of limitations for a violation of the FCEUA is "two years from the date on which the violation occurs." 73 P.S. 2270.5(b). Thus, Plaintiffs' allegations concerning the actions which Plaintiffs claim Countrywide, or other predecessors in interest of Caliber, did not take in the immediate aftermath of the Confidential Settlement Agreement in 2010, or at any time before January 2017, are not actionable, and would be time barred *See* Complaint, ¶ 16-17 (purportedly seeking to collect amounts not owed). The closest Plaintiffs get to a specific allegation against Caliber is the allegation that Caliber has "attempted to charge interest in excess of 4% and demanded monthly payments as high as $28,364.02." Complaint, ¶ 17. But because those allegations are belied by Plaintiffs' own exhibits, they fail to support Plaintiffs' FCEUA claim just as they fail to support Plaintiffs' breach of contract claim. *See generally* § II(B), *supra*.

### V. Conclusion

For these reasons, all of Plaintiffs' claims against Caliber should be dismissed in their entirety with prejudice.

Respectfully submitted,

*/s/ Robert C. Folland*
Robert C. Folland (PA No. 320318)
Barnes & Thornburg LLP
41 S. High Street, Suite 3300
Columbus, Ohio 43215
Phone: 614-628-0096
Fax: 614-628-1433
Rob.folland@btlaw.com
*Counsel for Defendant Caliber Home Loans, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on March 18th, 2019, a copy of the foregoing was electronically

filed with the Court and served on all parties of record via the Court's CM/ECF system.


_/s/ Robert C. Folland_____
Robert C. Folland