**ALAN L. FRANK LAW ASSOCIATES, P.C.**
BY:     ALAN L. FRANK, ESQ. (#34414)
            JACLYN H. FRANK, ESQ. (#322452)
135 Old York Road
Jenkintown, PA 19046
T: 215.935.1000/F: 215.935.1110                                   *Attorneys for Plaintiffs*
E-mail: afrank@alflaw.net
            jaclynfrank@alflaw.net

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
PHILADELPHIA DIVISION**

| | | |
|---|---|---|
| **SCOTT H. KORN and ARLENE A. KORN** | : | **Civil Action No. 19-226** |
| Plaintiffs, | : | |
| | : | |
| v. | : | **Jury Trial Demanded** |
| | : | |
| **CALIBER HOME LOANS, INC.** | : | **AMENDED COMPLAINT** |
| Defendant. | : | |

**AMENDED COMPLAINT**

**PARTIES**

Plaintiffs Scott H. Korn and Arlene A. Korn, by and through their undersigned counsel,

hereby file this Amended Complaint, and in support thereof, state as follows:

1.      Plaintiffs Scott Korn and Arlene Korn are adult individuals residing at 1233

Meadowbank Road, Villanova, Pennsylvania 19085.

2.      Defendant Caliber Home Loans, Inc. ("Caliber") is a national mortgage lender

with a registered business address at 1525 S. Belt Line Road, Coppell, TX 75019.  Defendant

conducts business in Pennsylvania.

**JURISDICTION AND VENUE**

3.      The Complaint was initially filed in the Court of Common Pleas of Montgomery

County, Pennsylvania.  In that Complaint, Plaintiff stated that jurisdiction and venue are proper

1

in this Court because this action concerns the property at 1233 Meadowbank Road, Villanova,

PA 19085 (the "Property") and the Property is located in Montgomery County, Pennsylvania.

4.     Defendant Caliber has since filed a Notice of Removal of Civil Action from State

Court, which Plaintiff has not objected to.

## FACTS

5.     On or about September 8, 2006, Scott Korn borrowed approximately $3.15

million from Countrywide Home Loans, a/k/a America's Wholesale Lender ("Countrywide").

6.     Countrywide purported to obtain and hold a security interest in the marital home

of the Korns located at 1233 Meadowbank Road, Villanova, Montgomery County, Pennsylvania

19085 (the "Property"), as collateral for the loan.

7.     However, the Korns disputed the validity of that security interest, since Arlene

Korn, Scott's wife, is not a borrower or obligor on the loan and did not sign any debt instrument

for the loan.

8.     Litigation then ensued between Countrywide, the Korns, and other related parties,

involving the circumstances surrounding the loan.  More specifically, Countrywide claimed that

Scott Korn breached the loan, while Scott Korn claimed that Countrywide engaged in bait and

switch tactics.  The Korns alleged consumer protection law violations, fraudulent

misrepresentations, negligent misrepresentations, civil conspiracy, and seeking injunctive and

declaratory relief and statutory damages, in the cases styled Scott Korn et als v Countrywide

Financial Corp et als, CCP Montg., Civil No. 2008-04599, and Countrywide Home Loans et als

v Scott Korn et als, CCP Montg.m Civil No. 2008-11296; and Countrywide Home Loans et als v

Scott Korn, USDC ED PA, No. 2008-cv-02702 (collectively the "Countrywide Litigation").

### Caliber Breaches Confidential Settlement Agreement

2

9.     As a result of Mediation through JAMS before retired Judge Diane Welsh, the Korns and Countrywide, among others, entered into a certain Confidentiality Settlement Agreement and Mutual Release dated as of November 17, 2010 (the "Confidential Settlement Agreement" or "Agreement"), that settled the Countrywide Litigation and other litigation involving other parties to that dispute.

10.     The Confidential Settlement Agreement, by its express terms, is binding upon any alleged successors-in-interest to Countrywide.

11.     The Confidential Settlement Agreement provided in relevant part as follows: (1) the note and mortgage would be modified to provide a lower interest rate and a lower monthly payment for Scott Korn (specifically, the interest rate on the loan was fixed at 4% with monthly payments of $14,826.90, amortized on a forty year basis); (2) Countrywide agreed to zero-out the escrow account (which at the time of the Settlement was in excess of $300,000.00), and to zero-out the accrued interest account (which at the time of the Settlement was in excess of $500,000.00); (3) the accrued interest owed would be added to the loan balance; and (4) the parties agreed to a further JAMS Mediation before Judge Diane Welsh in the event of a dispute.

12.     But instead of Countrywide adjusting its books to consummate and reflect the Settlement, Countrywide sold the Korn loan as part of a package of other Countrywide loans (without first modifying Countrywide's records to zero-out the escrow account balance or to zero-out the accrued interest balance, or to reflect the reduced interest rate and reduced monthly payments), and then Countrywide sold the loan to a new entity.

13.     At one time or another, several entities have claimed an interest in the Korn loan facility, including: Bank of America, NA; Christiana Trust (affiliated with Wilmington Savings Fund Society); and Wilmington Trust, NA.

14.    LSF9 Master Participation Trust ("LSF9"), a lending institution located in Oklahoma City, Oklahoma that conducts business in Pennsylvania, claims to be the current successor-in-interest and holder of the loan.

15.    Caliber claims to be the servicer for LSF9 for the loan.  In fact, upon information and belief, LSF9 owns Caliber, and Caliber operates as LSF9's representative.

16.    After Countrywide transferred the loan to a successor-in-interest, Scott Korn received notice that OCWEN Loan Servicing, LLC ("Ocwen"), and then Caliber, was the loan servicer on the loan.

17.    In response, and over the course of several years, Scott Korn authored approximately 50 letters to those successor lenders/servicers, informing them of the 2010 Settlement and of the failure of Countrywide and its successors to correct the proper amounts due and owing on the lender's books. (See Sample Correspondence from Mr. Korn to Countrywide, attached hereto as Exhibit A.[1])

18.    However, none of the lenders or servicers, including LSF9 and Caliber, ever made such corrections, and instead have attempted to charge interest in excess of 4% and demanded monthly payments as high as $28,364.02.

### Caliber Commits Mortgage Fraud

19.    In 2017, settlement negotiations ensued between the Korns and Caliber, who held itself out to be the servicer of the loan for LSF9.

---

[1] The remaining letters are voluminous and contain what Scott Korn believes is confidential information, but will be produced for Caliber if required; however, Caliber should already have copies of all of the letters written by Scott Korn to them.

20.     To aid the parties in the settlement process, the parties agreed that Caliber/LSF9 would obtain an independent appraiser to value the Property.  Said value would be used as the starting point for further settlement discussions.

21.     There was no expectation for the Korns to obtain an independent appraiser of their own.

22.     Caliber/LSF9 hired Clear Capital, which in turn used Elite Premier Properties/Elite REO Services (specifically appraiser Gerard Maddrey) to perform the appraisal.

23.     On average, Maddrey would receive 30 appraisal jobs per week from Caliber/LSF9 that would make up about 70 percent of Maddrey's business and earnings.

24.     On or around May 10, 2017, Joey Krouse, who holds himself out as Vice President and Associate General Counsel for Caliber, scheduled an appointment for Maddrey to come and inspect the Property.

25.     A few days later, Maddrey showed up at the Property to conduct his appraisal. Maddrey issued his independent appraisal report valued the Property at $1.19 million, with a forced sale value of $900,000.00.  Maddrey contacted Scott Korn to let him know what the appraisal value was.

26.     Roughly five days later, Maddrey called Scott Korn in a panic and explained that Caliber/LSF9 were not satisfied with the report and had asked Maddrey to increase the Property value significantly.

27.     Roughly two or three days later, Maddrey called Scott Korn and informed Scott Korn of the new appraisal for $1.4 million.  Maddrey advised that Caliber/LSF9 had asked for Maddrey to raise the price again, which Maddrey declined to do.

28.     On May 19, 2017, Maddrey advised that the Property had in fact increased from its original valuation pursuant to Caliber/LSF9's request as follows:

> I don't have the actual report showing the 1,19 [sic] but the email below is what they sent me to change it to the current. Please do not share this email with anyone. This is for your information only. I could lose my license.

(Exhibit B.)

29.     Maddrey went from receiving 30 jobs per week from Caliber/LSF9 to two jobs per week as stated in a June 14, 2017 text message. (Exhibit C.)

30.     In a separate text message, Maddrey attempted to remind Scott Korn that he agreed not to share this information with anybody. (Exhibit C.)

31.     On June 28, 2017, Maddrey acknowledged in an email to Scott Korn that:

> I spoke to them. So my guess is you will not call me back or honor your word and will proceed litigation with "your evidence" and screw me and my family after I was very kind to you and tried to help you.

(Exhibit D.)

32.     Based on the foregoing, it has become clear that Caliber/LSF9 instructed Maddrey to re-appraise the Property at a higher value and threatened Maddrey that he would not receive any more appraisal work if he refused.

33.     Caliber/LSF9 attempted to secretly and improperly influence the appraiser, while hiding the first (lesser amount) appraisal from the Korns to grossly overinflate the appraisal in its negotiations with the Korns and their counsel.

34.     As a result of Caliber/LSF9's illegal activities, the Korns have suffered damages.

## COUNT I – BREACH OF CONTRACT

35.     Plaintiffs incorporate all of the foregoing paragraphs by reference as set forth at length herein.

36. On November 17, 2010, the Korns and Countrywide, among others, entered into a certain Confidentiality Settlement Agreement and Mutual Release that settled the Countrywide Litigation and other litigation involving other parties to that dispute.

37. The Confidential Settlement Agreement, by its express terms, is binding upon any alleged successors-in-interest to Countrywide, including LSF9, which alleges that it is the successor-in-interest to Countrywide, and Caliber, which alleges to be the servicer for LSF9 for the loan.

38. The Confidential Settlement Agreement provided in relevant part as follows: (1) the note and mortgage would be modified to provide a lower interest rate and a lower monthly payment for Scott Korn; (2) Countrywide agreed to zero-out the escrow account and to zero-out the accrued interest account; (3) the accrued interest owed would be added to the loan balance; and (4) the parties agreed to a further JAMS Mediation before Judge Diane Welsh in the event of a dispute.

39. Caliber, as the servicer for LSF9 for the loan, failed to reduce the interest and the monthly payments due on the Loan, and to reset the escrow balances to zero.

40. Caliber's violations of the Confidential Settlement Agreement constitute material breaches of the Agreement.

41. These material breaches eliminated the Korns' duty to perform under the Agreement and the Loan until Caliber complies with the terms of the Agreement.

42. Additionally, as a result of Caliber's breaches, the Korns have suffered damages.

WHEREFORE, Plaintiffs pray for relief as more fully set forth below.

## COUNT II – FRAUDULENT MISREPRESENTATION

43.      Plaintiffs incorporate all of the foregoing paragraphs by reference as set forth at length herein.

44.      In 2017, the Korns and Caliber, who held themselves out to be the servicer of the Loan for LSF9, agreed that Caliber/LSF9 would obtain an independent appraiser to value the Property. All parties understood that said value would be used as the starting point for further settlement discussions.

45.      Caliber influenced the real estate appraiser, who was supposed to perform an "independent" appraisal on the Property, to go back and submit a second, higher appraisal, after the first appraisal that was produced was rejected by Caliber or its agents as insufficient.

46.      Caliber hid the first (lesser amount) appraisal from the Korns, and instead, submitted the second (improperly influenced and grossly overinflated) appraisal in its financial dealings and negotiations with the Korns and their counsel.

47.      Caliber represented that the second appraisal was independent and was the only appraisal received.

48.      Caliber intended that the Korns rely on said representation.

49.      The Korns reasonably relied on said representation.

50.      Caliber's representation was false because the appraisal was in fact improperly influenced by Caliber and was received after Caliber instructed the appraiser to submit a second, higher appraisal.

51.      Caliber knew at the time it made its representation that the representation was false, or made recklessly without knowledge of its truth.

52.      As a result of Caliber's conduct, the Korns have suffered damages.

WHEREFORE, Plaintiffs pray for relief as more fully set forth below.

## COUNT III – NEGLIGENT MISREPRESENTATION

53.    Plaintiffs incorporate all of the foregoing paragraphs by reference as set forth at length herein.

54.    In 2017, the Korns and Caliber, who held themselves out to be the servicer of the Loan for LSF9, agreed that Caliber/LSF9 would obtain an independent appraiser to value the Property.  All parties understood that said value would be used as the starting point for further settlement discussions.

55.    Caliber influenced the real estate appraiser, who was supposed to perform an "independent" appraisal on the Property, to go back and submit a second, higher appraisal, after the first appraisal that was produced was rejected by Caliber/ LSF9 or its agents as insufficient.

56.    Caliber hid the first (lesser amount) appraisal from the Korns, and instead, submitted the second (improperly influenced and grossly overinflated) appraisal in its financial dealings and negotiations with the Korns and their counsel.

57.    Caliber represented that the second appraisal was independent and was the only appraisal received.

58.    Caliber's representation was false because the appraisal was in fact improperly influenced by Caliber and was received after Caliber instructed the appraiser to submit a second, higher appraisal.

59.    Caliber either knew at the time it made its representation that the representation was false, made the representation recklessly without knowledge of its truth, and/or had no reasonable grounds for believing the representation was true when made.

60.    Caliber intended that the Korns rely on said representation.

61.    The Korns reasonably relied on said representation.

62.    As a result of Caliber's conduct, the Korns have suffered damages.

WHEREFORE, Plaintiffs pray for relief as more fully set forth below.

## COUNT IV – CIVIL CONSPIRACY

63.    Plaintiffs incorporate all of the foregoing paragraphs by reference as set forth at length herein.

64.    In 2017, the Korns and Caliber, who held themselves out to be the servicer of the Loan for LSF9, agreed that Caliber/LSF9 would obtain an independent appraiser to value the Property. Said value would be used as the starting point for further settlement discussions.

65.    Pursuant to the agreement between the Korns and Caliber/LSF9, Caliber had a duty to the Korns to obtain an independent appraiser to value the Property, to be used as a starting point for further settlement discussions.

66.    LSF9 and Caliber agreed to act together in wrongfully influencing the real estate appraiser, who was supposed to perform an "independent" appraisal on the Property, to go back and submit a second, higher appraisal, after the first appraisal that was produced was rejected by Caliber/LSF9 or its agents as insufficient; and by failing to disclose such wrongful and fraudulent conduct to the Korns, but instead, using the second improperly influenced and grossly overinflated appraisal in its financial dealings and negotiations with the Korns and their counsel, while hiding the first (lesser amount) appraisal from the Korns, and without disclosing Caliber/LSF9's improper influence on the appraiser.

67.    LSF9 and Caliber intended to accomplish their unlawful goal of using the second improperly influenced and grossly overinflated appraisal in their financial dealings and

negotiations with the Korns and their counsel, while hiding the first (lesser amount) appraisal from the Korns.

68.     As a result of Caliber's conduct, the Korns have suffered damages.

WHEREFORE, Plaintiffs pray for relief as more fully set forth below.

## COUNT V – VIOLATION OF THE FAIR
## CREDIT EXTENSION UNIFORMITY ACT

69.     Plaintiffs incorporate all of the foregoing paragraphs by reference as set forth at length herein.

70.     Defendant Caliber is a "creditor" pursuant to the Pennsylvania Fair Credit Extension Uniformity Act ("FCEU"), 73 P.S. §2270.1, *et seq*.

71.     At all times relevant hereto, Plaintiffs are "debtors" pursuant to the FCEU.

72.     Caliber, by and through its agents, made false, deceptive and misleading representations of the alleged debt, in violation of the FCEU.

73.     Namely, Caliber has made false representations regarding the character, amount and legal status of the allege debt.

74.     Caliber, by and through its agents, has harassed, oppressed and abused Defendants in an effort to collect an improper debt, in violation of the FCEU.

75.     Caliber, by and through its agents, attempted to collect an unauthorized debt through unfair and unconscionable means.

76.     Pursuant to the provisions of the FCEU, Plaintiffs are entitled to recover punitive and treble damages.

WHEREFORE, Plaintiffs pray for relief as more fully set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendant and in their favor as

follows:

      (a)    Actual and compensatory damages;
      (b)    For punitive damages according to proof;
      (c)    For injunctive relief;
      (d)    For declaratory relief;
      (e)    For attorneys fees and costs of suit; and
      (f)    For such other and further relief as the Court deems just and
            proper.

Respectfully submitted,

By: _____

Alan L. Frank, Esquire
Jaclyn H. Frank, Esquire
Alan L. Frank Law Associates, P.C.
135 Old York Road
Jenkintown, PA 19046
P: (215) 935-1000
F: (215) 935-1110
Attorneys for Plaintiffs

Date: 3/28/19

## JURY DEMANDED

Plaintiff demands a trial by jury for all counts so triable.

Respectfully submitted,

By: _____

Alan L. Frank, Esquire
Jaclyn H. Frank, Esquire
Alan L. Frank Law Associates, P.C.
135 Old York Road
Jenkintown, PA 19046
P: (215) 935-1000
F: (215) 935-1110
Attorneys for Plaintiffs

Date: 3/28/19

12

## VERIFICATION

I verify that the statements made in the attached Amended Complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements made herein are subject to the penalties of 18 Pa. C.S. §4904, relating to unsworn falsification to authorities.

Dated: 3/26/2019

Arlene A. Korn

1

## VERIFICATION

I verify that the statements made in the attached Amended Complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements made herein are subject to the penalties of 18 Pa. C.S. §4904, relating to unsworn falsification to authorities.

Dated: 3/26/2019

Scott H. Korn

1