ALAN L. FRANK LAW ASSOCIATES, P.C.
BY:   ALAN L. FRANK, ESQ. (#34414)
        JACLYN H. FRANK, ESQ. (#322452)
135 Old York Road
Jenkintown, PA 19046
T: 215.935.1000/F: 215.935.1110                                  *Attorneys for Plaintiffs*
E-mail: afrank@alflaw.net
         jaclynfrank@alflaw.net

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA
## PHILADELPHIA DIVISION

| | |
|---|---|
| **SCOTT H. KORN and ARLENE A. KORN**<br>Plaintiffs,<br><br>v.<br><br>**CALIBER HOME LOANS, INC.**<br>Defendant. | Civil Action No. 19-226 |

## BRIEF IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiffs Scott H. Korn and Arlene A. Korn, by and through their undersigned counsel, hereby file this Brief in Support of Plaintiffs' Opposition to Defendant's Motion to Dismiss.

**I.   FACTS**

On or around September 8, 2006, Scott Korn borrowed approximately $3.15 million from Countrywide Home Loans, a/k/a America's Wholesale Lender ("Countrywide"). See Amended Complaint ("Complaint") at Docket #9, ¶5. Countrywide purported to obtain and hold a security interest in the marital home of the Korns located at 1233 Meadowbank Road, Villanova, Montgomery County, Pennsylvania 19085 (the "Property"), as collateral for the loan. Id., ¶6. However, the Korns disputed the validity of that security interest, since Arlene Korn, Scott's wife, is not a borrower or obligor on the loan and did not sign any debt instrument for the loan. Id., ¶7.

1

Litigation then ensued between Countrywide, the Korns, and other related parties, involving the circumstances surrounding the loan. Id., ¶8. Countrywide claimed that Scott Korn breached the loan, while Scott Korn claimed that Countrywide engaged in bait and switch tactics. Id. The Korns alleged consumer protection law violations, fraudulent misrepresentations, negligent misrepresentations, civil conspiracy, and seeking injunctive and declaratory relief and statutory damages, in the cases styled Scott Korn et als v Countrywide Financial Corp et als, CCP Montg., Civil No. 2008-04599, and Countrywide Home Loans et als v Scott Korn et als, CCP Montg.m Civil No. 2008-11296; and Countrywide Home Loans et als v Scott Korn, USDC ED PA, No. 2008-cv-02702 (collectively the "Countrywide Litigation"). Id.

As a result of Mediation through JAMS before retired Judge Diane Welsh, the Korns and Countrywide, among others, entered into a certain Confidentiality Settlement Agreement and Mutual Release dated as of November 17, 2010 (the "Confidential Settlement Agreement"), that settled the Countrywide Litigation and other litigation involving other parties to that dispute. Id., ¶9.

The Confidential Settlement Agreement, by its express terms, is binding upon any alleged successors-in-interest to Countrywide. Id., ¶10. The Confidential Settlement Agreement provides in relevant part as follows: (1) the note and mortgage would be modified to provide a lower interest rate and a lower monthly payment for Scott Korn (specifically, the interest rate on the loan was fixed at 4% with monthly payments of $14,826.90, amortized on a forty year basis); (2) Countrywide agreed to zero-out the escrow account (which at the time of the Settlement was in excess of $300,000.00), and to zero-out the accrued interest account (which at the time of the Settlement was in excess of $500,000.00); (3) the accrued interest owed would be added to the

2

loan balance; and (4) the parties agreed to a further JAMS Mediation before Judge Diane Welsh in the event of a dispute. Id., ¶11.

But instead of Countrywide adjusting its books to consummate and reflect the Settlement, Countrywide sold the Korn loan as part of a package of other Countrywide loans (without first modifying Countrywide's records to zero-out the escrow account balance or to zero-out the accrued interest balance, or to reflect the reduced interest rate and reduced monthly payments), and then Countrywide sold the loan to a new entity. Id., ¶12. At one time or another, several entities have claimed an interest in the Korn loan facility, including: Bank of America, NA; Christiana Trust (affiliated with Wilmington Savings Fund Society); and Wilmington Trust, NA. Id., ¶13.

LSF9 Master Participation Trust ("LSF9"), a lending institution, claims to be the current successor-in-interest and holder of the loan. Id., ¶14. Caliber claims to be the servicer for LSF9 for the loan. Id., ¶15. In fact, upon information and belief, LSF9 owns Caliber, and Caliber operates as LSF9's representative. Id.

After Countrywide transferred the loan to a successor-in-interest, Scott Korn received notice that OCWEN Loan Servicing, LLC ("Ocwen"), and then Caliber, was the loan servicer on the loan. Id., ¶16. In response, and over the course of several years, Scott Korn authored approximately 50 letters to those successor lenders/servicers, informing them of the 2010 Settlement and of the failure of Countrywide and its successors to correct the proper amounts due and owing on the lender's books. Id., ¶17; see also Sample Correspondence from Mr. Korn to Countrywide, attached to the Complaint as Exhibit A. However, none of the lenders or servicers, including LSF9 and Caliber, ever made such corrections, and instead have attempted to charge interest in excess of 4% and demanded monthly payments as high as $28,364.02. Id., ¶18.

3

In 2017, settlement negotiations ensued between the Korns and Caliber, who held itself out to be the servicer of the loan for LSF9. Id., ¶19. To aid the parties in the settlement process, the parties agreed that Caliber/LSF9 would obtain an independent appraiser to value the Property. Id., ¶20. Said value would be used as the starting point for further settlement discussions. Id. There was no expectation for the Korns to obtain an independent appraiser of their own. Id., ¶21.

Caliber/LSF9 hired Clear Capital, which in turn used Elite Premier Properties/Elite REO Services (specifically appraiser Gerard Maddrey) to perform the appraisal. Id., ¶22. On average, Maddrey would receive 30 appraisal jobs per week from Caliber/LSF9 that would make up about 70 percent of Maddrey's business and earnings. Id., ¶23.

On or around May 10, 2017, Joey Krouse, who holds himself out as Vice President and Associate General Counsel for Caliber, scheduled an appointment for Maddrey to come and inspect the Property. Id., ¶24. A few days later, Maddrey showed up at the Property to conduct his appraisal. Id., ¶25. Maddrey issued his independent appraisal report valued the Property at $1.19 million, with a forced sale value of $900,000.00. Id. Maddrey contacted Scott Korn to let him know what the appraisal value was. Id.

Roughly five days later, Maddrey called Scott Korn in a panic and explained that Caliber/LSF9 were not satisfied with the report and had asked Maddrey to increase the Property value significantly. Id., ¶26. Roughly two or three days thereafter, Maddrey called Scott Korn and informed Scott Korn of the new appraisal for $1.4 million. Id., ¶27. Maddrey advised that Caliber/LSF9 had asked for Maddrey to raise the price again, which Maddrey declined to do. Id.

On May 19, 2017, Maddrey advised that the Property had in fact increased from its original valuation pursuant to Caliber/LSF9's request as follows:

4

> I don't have the actual report showing the 1,19 [sic] but the email below is what they sent me to change it to the current. Please do not share this email with anyone. This is for your information only. I could lose my license.

Id., ¶28; see also Compl. Ex. B. Maddrey went from receiving 30 jobs per week from Caliber/LSF9 to two jobs per week as stated in a June 14, 2017 text message. Id., ¶29; see also Compl. Ex. C. In a separate text message, Maddrey attempted to remind Scott Korn that he agreed not to share this information with anybody. Id., ¶30, Ex. C.

> On June 28, 2017, Maddrey acknowledged in an email to Scott Korn that:
> I spoke to them. So my guess is you will not call me back or honor your word and will proceed litigation with "your evidence" and screw me and my family after I was very kind to you and tried to help you.

Id., ¶31; see also Compl. Ex. D.

Caliber/LSF9 instructed Maddrey to re-appraise the Property at a higher value and threatened Maddrey that he would not receive any more appraisal work if he refused. Id., ¶32. Caliber/LSF9 attempted to secretly and improperly influence the appraiser, while hiding the first (lesser amount) appraisal from the Korns to grossly overinflate the appraisal in its negotiations with the Korns and their counsel. Id., ¶33. As a result of Caliber/LSF9's illegal activities, the Korns have suffered damages. Id., ¶34.

## II. LEGAL ARGUMENT

### A. Standard of Review

Pursuant to Fed. R. Civ. P. 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." However, the Court will not dismiss the complaint for failure to state a cause of action "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of their claim which would entitle them to relief." Schorr v. Borough of Lemoyne, 2002 U.S.Dist. LEXIS 25668 (ED Pa. 2002) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Courts in this district must focus on whether the plaintiffs are

5

entitled to offer evidence to support their claims, rather than whether they will ultimately prevail. See, e.g. Lake v. Arnold, 112 F.3d 682, 688 (3d Cir. 1997).

The United States Court of Appeals for the Third Circuit recently reiterated that "the facts alleged must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." Patel v. Patel, No. 14-5845, 2016 U.S. Dist. LEXIS 68444, at *21-22 (E.D. Pa. May 25, 2016) (citing Connelly v. Lane Const. Corp., 809 F.3d 780, 790-91 (3d Cir. 2016)). When reviewing a motion to dismiss for failure to state a claim, the Court "must accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine, whether under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)). "To survive a motion to dismiss, a complaint must contain factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In the instant matter, the Korns have pled sufficient facts to both support its claims for relief and put Caliber on notice of the essential elements of those claims. Thus, Caliber's request for dismissal under Fed. R. Civ. P. 12(b)(6) should be denied.

**B. Caliber's Preliminary Objection to the Breach of Contract Claim (Count I) Should Be Overruled.**

In order to state a cause of action for breach of contract, a Plaintiff must allege (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resulting damages. Devon It v. IBM Corp., No. 10-2899, 2013 U.S. Dist.

6

LEXIS 184278, at *69 (E.D. Pa. Nov. 21, 2013). A party breaches a bilateral contract when he fails to do something which he has expressly or impliedly undertaken to do to facilitate performance by the other party. Id. (citing Johnson v. Fenestra, Inc., 305 F.2d 179, 181 (3d Cir. 1962)). Plaintiff has adequately pled a cause of action for breach of contract in its Complaint.

The first element for breach of contract is clearly satisfied, as the Korns specifically alleged the existence of the Confidential Settlement Agreement and its essential terms. The Confidential Settlement Agreement, by its express terms, is binding upon any alleged successors-in-interest to Countrywide, including LSF9, which alleges that it is the successor-in-interest to Countrywide, and Caliber, which alleges to be the servicer for LSF9 for the loan. Compl., ¶37. The Complaint sets out the essential terms of the Confidential Settlement Agreement, which are as follows: (1) the note and mortgage would be modified to provide a lower interest rate and a lower monthly payment for Scott Korn (specifically, the interest rate on the loan was fixed at 4% with monthly payments of $14,826.90, amortized on a forty year basis); (2) Countrywide agreed to zero-out the escrow account (which at the time of the Settlement was in excess of $300,000.00), and to zero-out the accrued interest account (which at the time of the Settlement was in excess of $500,000.00); (3) the accrued interest owed would be added to the loan balance; and (4) the parties agreed to a further JAMS Mediation before Judge Diane Welsh in the event of a dispute. Id., ¶11.

The second element is also satisfied, as the Korns specifically pled Caliber's multiple breaches of the Confidential Settlement Agreement. Caliber claims that the Korns alleged <u>only</u> that Caliber charged an interest rate above 4% and monthly payments above $14,826.90. However, the Korns specifically pled that: (1) Caliber promised, and failed, to modify the mortgage to reflect an interest rate <u>lower</u> than 4%, and monthly payments <u>lower</u> than $14,826.90;

7

and (2) Caliber agreed, but failed, to zero-out the escrow account in excess of $300,000.00. Id., ¶12. Over the course of several years, Scott Korn authorized approximately 50 letters to Caliber's predecessors informing them of the 2010 Settlement and their multiple breaches. Id., ¶17.

Finally, the third element is satisfied, as the Korns have suffered damages as a result of Caliber's breaches. Caliber claims that "Plaintiffs have already taken the self-help remedy of choosing not to perform, and thus have suffered no damages." See Def. Brief, p. 5. But the Korns' refusal to perform has not gone unpunished. Caliber fails to disclose the pending lawsuit brought by Caliber's agent, LSF9, in Montgomery County, Pennsylvania based on the Korns' alleged breach of the Confidential Settlement Agreement (the "State Court Action").[1] According to Caliber, Caliber and LSF9 are, "for all intents and purposes, advancing the interests of the same entity" and are so closely related that they "cannot conspire with one another." See Def. Brief, p. 13. Thus, Caliber, through LSF9, has already instituted foreclosure proceedings against the Korns and put the Korns in jeopardy of losing their home. The Korns have suffered damages by being hauled into litigation and put at risk of losing their home.

Caliber argues that the Korns did not allege their own performance under the Confidential Settlement Agreement, and therefore cannot sue for breach of contract. This is a moot point. The Korns had no duty to perform under the Confidential Settlement Agreement after Caliber committed multiple material breaches. Only _after_ Caliber's failure to perform did the Korns stop making payments.

Because the Korns have clearly pled a claim for breach of contract, Caliber's preliminary objection should be overruled.

---

[1] The State Court Action has since been stayed pending the outcome of the instant matter.

8

C.  **Caliber's First Preliminary Objection to the Claims for Fraudulent Misrepresentation (Count II) and Negligent Misrepresentation (Count III) Should Be Overruled.**

"The elements of fraudulent misrepresentation are: (1) a representation; (2) material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) a resulting injury proximately caused by the reliance." Patel v. Patel, 2016 U.S. Dist. LEXIS 68444, *12-13 (2016) (internal citation omitted).

To establish a claim for negligent misrepresentation, the moving party must show that there was: (1) a misrepresentation of a material fact; (2) made under the circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation. Floyd v. Wigfield, 42 Pa. D. & C.5th 141, 152-53 (2014) (internal citation omitted.)

"General principles of tort law of necessity come into play in [the] examination of the common law tort of negligent misrepresentation and the tort embodied in Section 552 [of the Restatement (second) of Torts]...." Bilt-Rite Contractors, Inc. v. Architectural Studio, 581 Pa. 454, 470 (2005). "Section 552 sets forth the parameters of a duty owed when one supplies information to others, for one's own pecuniary gain, where one intends or knows that the information will be used by others in the courts of their own business activities." Id. at 479. Moreover, that supplier of "false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." Id. at n.2. Section 552 was adopted "as the law in Pennsylvania in cases where information is negligently supplied by one in the business of

9

supplying information, such as an architect or design professional, and where it is foreseeable that the information will be used and relied upon by third persons, even if the third parties have no direct contractual relationship with the supplier of information. Id. at 482.

Here, although Caliber objects to both the fraudulent misrepresentation and negligent misrepresentation claims, Caliber's argument is mainly based on negligent misrepresentation. Caliber argues that the Korns' claim for negligent misrepresentation should be dismissed because the Korns are unable to point to a statement that was made by a specific individual at Caliber and when it was made to the Korns. However, it is irrelevant whether Caliber made statements directly to the Korns. So long as it was foreseeable that the Korns, a third party, would be relying on information provided by Caliber to Maddrey, that is enough. Here, Caliber knew that its statements would influence Maddrey on increasing the appraisal value on the property and that the Korns would be relying on that information. Caliber also knew that if Maddrey disobeyed Caliber's orders, Maddrey would go from receiving 30 jobs per week to two jobs. A view of Caliber's statements to Maddrey can be seen through Maddrey's reaction to Caliber's actions as follows:

> 25. A few days [after May 10, 2017], Maddrey showed up at the Property to conduct his appraisal. Maddrey issued his independent appraisal report valued the Property at $1.19 million, with a forced sale value of $900,000.00. Maddrey contacted Scott Korn to let him know what the appraisal value was.
>
> 26. Roughly five days later, Maddrey called Scott Korn in a panic and explained that Caliber/LSF9 were not satisfied with the report and had asked Maddrey to increase the Property value significantly.
>
> 27. Roughly two or three days later, Maddrey called Scott Korn and informed Scott Korn of the new appraisal for $1.4 million. Maddrey advised that Caliber/LSF9 had asked for Maddrey to raise the price again, which Maddrey declined to do.

28. On May 19, 2017, Maddrey advised that the Property had in fact increased from its original valuation pursuant to Caliber/LSF9's request as follows:

> I don't have the actual report showing the 1,19 [sic] but the email below is what they sent me to change it to the current. Please do not share this email with anyone. This is for your information only. I could lose my license.
>
> ...

29. Maddrey went from receiving 30 jobs per week from Caliber/LSF9 to two jobs per week as stated in a June 14, 2017 text message. ...

30. In a separate text message, Maddrey attempted to remind Scott Korn that he agreed not to share this information with anybody. ...

31. On June 28, 2017, Maddrey acknowledged in an email to Scott Korn that:

> I spoke to them. So my guess is you will not call me back or honor your word and will proceed litigation with "your evidence" and screw me and my family after I was very kind to you and tried to help you.
>
> ...

Compl. ¶¶25-31.

Caliber made direct statements to Maddrey, and Maddrey repeated said information to the Korns. It was entirely foreseeable that the Korns, a third-party, would be relying on those statements, thereby allowing the Korns to bring forth claims for both fraudulent misrepresentation and negligent misrepresentation. Based on the foregoing, the claims for fraudulent misrepresentation and negligent misrepresentation should not be dismissed.

**D.     Caliber's Second Preliminary Objection to the Claims for Fraudulent Misrepresentation (Count II) and Negligent Misrepresentation (Count III) Should Be Overruled.**

"The elements of fraudulent misrepresentation are: (1) a representation; (2) material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5)

11

justifiable reliance on the misrepresentation; and (6) a resulting injury proximately caused by the reliance." Patel v. Patel, 2016 U.S. Dist. LEXIS 68444, *12-13 (2016) (internal citation omitted).

To establish a claim for negligent misrepresentation, the moving party must show that there was: (1) a misrepresentation of a material fact; (2) made under the circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation. Floyd v. Wigfield, 42 Pa. D. & C.5th 141, 152-53 (2014) (internal citation omitted.)

"General principles of tort law of necessity come into play in [the] examination of the common law tort of negligent misrepresentation and the tort embodied in Section 552 [of the Restatement (second) of Torts]...." Bilt-Rite Contractors, Inc. v. Architectural Studio, 581 Pa. 454, 470 (2005). "Section 552 sets forth the parameters of a duty owed when one supplies information to others, for one's own pecuniary gain, where one intends or knows that the information will be used by others in the courts of their own business activities." Id. at 479. Moreover, that supplier of "false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." Id. at n.2. Section 552 was adopted "as the law in Pennsylvania in cases where information is negligently supplied by one in the business of supplying information, such as an architect or design professional, and where it is foreseeable that the information will be used and relied upon by third persons, even if the third parties have no direct contractual relationship with the supplier of information. Id. at 482.

Caliber claims it did not have any legal duty "to perform an independent appraisal or to inform Plaintiffs of every appraisal." See Def. Brief, p. 10. This is despite the fact that Caliber

12

promised to obtain an independent appraiser to value the Property and knew that said value would be used as the starting point for further settlement discussions. Compl., ¶20. Caliber assumed a duty to the Korns when it chose to supply information to the Korns that the Korns would then use. See Bilt-Rite Contractors, Inc., 581 Pa. at 470. Not only that, Caliber then gave false information to the Korns about the value of the Property. As such, Caliber is subject to liability for pecuniary loss caused to the Korns by the Korns' justifiable reliance upon the information. Id. at 479. The Korns' claims for fraudulent misrepresentation and negligent misrepresentation should not be dismissed.

### E.  Caliber's Preliminary Objection to the Civil Conspiracy Claim (Count IV) Should Be Overruled.

A cause of action for civil conspiracy requires: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage. Smith v. Wagner, 403 Pa. Super. 316, 319, 588 A.2d 1308, 1310 (1991). Caliber claims that the underlying fraudulent misrepresentation claim was not pled with sufficient specificity and, as a result, the civil conspiracy claim must be dismissed as well. However, as discussed in parts C and D, the fraudulent misrepresentation claim was properly pled in accordance with federal pleading standards.

Caliber also misstates Pennsylvania law and the allegations in the Complaint. Pennsylvania law permits a corporate parent and its wholly owned subsidiary to be found liable for civil conspiracy. Shared Communs. Servs. of 1800-80 Jfk Boulevard v. Bell Atl. Props., 692 A.2d 570, 574 (Pa. Super. Ct. 1997) (recognizing parent and subsidiary as two separate entities when accused of conspiracy). The Korns never alleged that "LSF9 and Caliber are so closely related that they could not have conspired with one another." See Def. Brief, p. 12. To the

contrary, the Korns alleged that Caliber is the servicer for LSF9, that LSF9 owns Caliber, and that Caliber operates as LSF9's representative. Compl., ¶15. While LSF9 and/or Caliber acted on *behalf* of the other, the Korns never alleged that Caliber and LSF9 were one and the same entity. Under Pennsylvania law, Caliber and LSF9 can certainly be found liable for civil conspiracy, even if they are closely related and/or one owns the other.

### F. Caliber's Preliminary Objection to the FCEUA Claim (Count V) Should Be Overruled.

The FCEUA "establishes what shall be considered unfair methods of competition and unfair or deceptive acts or practices with regard to the collection of debts." 73 Pa. Stat. Ann. § 2270.2. It includes among unfair or deceptive actions a violation of any of the provisions of the Fair Debt Collection Practices Act ("FDCPA"). See 73 Pa. Stat. Ann. § 2270.4(a). Additionally, FCEUA incorporates the damages provision of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). See 73 Pa. C.S. § 2270.5(a).

Caliber claims the Korns "failed to allege any specific act or statement by Caliber which purportedly violates the FCEAU," and, "[i]nstead, Plaintiffs parrot the language of the statute." See Def. Brief, p. 14. As stated in the Complaint, the FCEUA claim incorporates "all of the foregoing paragraphs [of the Complaint] by reference as set forth at length herein." Compl., ¶69. Throughout the Complaint, the Korns set forth specific facts surrounding Caliber's multiple, material breaches of the Confidential Settlement Agreement. Specifically, the Korns pled that: (1) Caliber promised, and failed, to modify the mortgage to reflect an interest rate lower than 4%, and monthly payments lower than $14,826.90; and (2) Caliber agreed, but failed, to zero-out the escrow account in excess of $300,000.00. Id., ¶12. In committing said breaches, Caliber made false representations regarding the character, amount and legal status of the alleged debt,

14

and harassed, oppressed and abused the Korns in an effort to collect an improper debt, in violation of the FCEUA. Id., ¶¶73-74.

Caliber also claims that the Korns did not plead that they suffered an ascertainable loss as a result of Caliber's breaches. The FCEUA incorporates the damages provision of the UTPCPL. See 73 Pa. C.S. § 2270.5(a). The UTPCPL provides a private right of action and the potential recovery of treble damages. 73 Pa.C.S. § 201-9.2(a). Specifically, under the damages provision of the UTPCPL, a plaintiff is entitled to:

> recover actual damages or one hundred dollars ($100), whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper. The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees.

Id. The Korns specifically pled that they are entitled to recover punitive and treble damages. Compl., ¶76. Additionally, Caliber incorrectly claims that "Plaintiffs have already taken the self-help remedy of choosing not to perform, and thus have suffered no damages." Caliber fails to disclose the pending State Court Action brought against the Korns by Caliber's agent, LSF9. Thus, Caliber has already instituted foreclosure proceedings against the Korns and put the Korns in jeopardy of losing their home. The Korns have additionally suffered damages by being hauled into litigation and put at risk of losing their home, all resulting from Caliber's own violations of the FCEUA.

Finally, Caliber argues that the FCEUA claim is time-barred. "A statute of limitations defense is an affirmative defense that a defendant must usually plead in his answer." Stephens v. Clash, 796 F.3d 281, 288 (3d Cir. 2015). "Although the statute of limitations is an affirmative defense, a court can dismiss a complaint based on the statute of limitations when 'the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly

appears on the face of the pleading.'" Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.1 (3d Cir.1994). However, "if the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." Dowell v. Bayview Loan Servs., LLC, No. 1:16-CV-02026, 2017 U.S. Dist. LEXIS 69149, at *52-53 (M.D. Pa. May 4, 2017) (citing Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014)). And "a plaintiff is not required to plead, in a complaint, facts sufficient to overcome an affirmative defense." Id. (citing Schmidt, 770 F.3d at 251). "Thus, if the pleading does not reveal when the limitations period began to run, then the statute of limitations cannot justify Rule 12 dismissal." Id. (internal citations omitted).

As stated throughout the Complaint, Caliber committed mortgage fraud in May and June of 2017, less than two years prior to the commencement of this lawsuit. Compl., ¶¶26-32. Caliber secretly and improperly influenced the real estate appraiser, while hiding the first appraisal from the Korns, to grossly overinflate the appraisal in its settlement negotiations with the Korns and their counsel. Id., ¶33.

Additionally, Caliber's breaches of the Confidential Settlement Agreement (which constitute violations of the FCEUA) continued to occur through and including 2017, followed by Caliber's mortgage fraud in May and June of 2017. "If, through fraud, deception or concealment of facts, an insurance company lulls an injured person or his representatives into a sense of security so that such person's vigilance is relaxed, then the company is estopped from evoking the statute." Walters v. Ditzler, 424 Pa. 445, 447, 227 A.2d 833, 834 (1967) (internal citations omitted). "The fraud which will toll the statute and effect an estoppel need not be fraud in the strictest sense, i.e., inclusive of an intent to deceive, but may be fraud in the broad sense, i.e., inclusive of an unintentional deception." Id. (internal citations omitted). Here, Caliber continued

to violate the FCEUA by continuously making false, deceptive and misleading representations of the alleged debt through and including 2017. Compl., ¶72. Throughout this time, Scott Korn authored approximately 50 letters to Caliber's predecessors, informing them of the 2010 Settlement and of their failure to correct the proper amounts due and owing on the lender's books. Id., ¶17. Finally, once the Korns and Caliber began settlement negotiations in 2017, Caliber lulled the Korns into a false sense of security that Caliber would obtain an independent appraiser to value the Property. Id., ¶¶17, 20. But Caliber intentionally deceived the Korns by secretly and improperly influencing the appraiser, while concealing the first appraisal from the Korns, to grossly overinflate the appraisal during settlement negotiations. Id., ¶33. Because of Caliber's continuous deception and concealment, the Korns were under a false sense of security until June 28, 2017, when settlement negotiations finally fell through. Id., ¶31. Thus, Caliber is estopped from evoking the statute of limitations.

## III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny the Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) against Defendant and in Plaintiff's favor, in the form of Order submitted herewith.

Respectfully submitted,

By: _____
Alan L. Frank, Esquire
Jaclyn H. Frank, Esquire
Alan L. Frank Law Associates, P.C.
135 Old York Road
Jenkintown, PA 19046
P: (215) 935-1000
F: (215) 935-1110
Attorneys for Plaintiffs

Date: April 26, 2019